IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

CITYLINE PARTNERSHIP, L.L.C.,　　　)
d/b/a SOUTHSIDE PAWN,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Petitioner,　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　　Case No: 4:23-cv-00493
　　　　　　　　　　　　　　　　　)
UNITED STATES　　　　　　　　　　)
DEPARTMENT OF JUSTICE　　　　　　)
BUREAU OF ALCOHOL, TOBACCO,　　　)
FIREARMS AND EXPLOSIVES,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Respondent.　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)

## MOTION FOR STAY OF ORDER REVOKING FEDERAL FIREARMS LICENSE

COMES NOW Cityline Partnership, L.L.C., d/b/a Southside Pawn, (Cityline) by and through its counsel, Larry H. Ferrell, Johnson Schneider and Ferrell, L.L.C., and moves this Court for an Order staying the decision of the Bureau of Alcohol, Tobacco, and Firearms revoking Petitioner's Federal Firearms License (FFL), until such time as the Court can conduct a de novo judicial review of said decision. In support thereof Petitioner states and alleges as follows.

### SUMMARY

Cityline , since 1998, has maintained a Federal Firearms License in good standing without suspension or revocation for nearly thirty (30) years. The initial license was issued in the name of Cityline Partnership, L.L.C.   In 2013, at the direction of ATF, the name on the FFL license was changed to Cityline Partnership, L.L.C., d/b/a Southside Pawn.

ATF has conducted compliance inspections of Petitioner's business on many occasions over the past thirty (30) years.  All without a resulting suspension or revocation. The latest inspection

occurred in June of 2022. ATF inspected approximately 1500 firearm transaction forms, known as 4433s. Each reporting form contains more than 75 entries where possible errors could occur. *Of the more than 100,000 possible errors, the inspectors found only four clerical mistakes, which were simply oversights on behalf of the employees.*

The Government may revoke Petitioner's FFL only upon a finding that Petitioner **willfully** committed a violation of a provision of Chapter 44 of the United States Code, or any rule or regulation prescribed by the Attorney General under Chapter 44. See 18 U.S. C. § 923 (e).

Petitioners did not willfully violate any rule or regulation. Three of the four mistakes were made by a relatively new, but exceedingly conscientious employee, Brendan Burnett. Mr. Burnett was selected to work in firearms dispositions because of his outstanding character, his commitment to his country, and his dedication to following rules.  Mr. Burnett is a veteran of the United States Army who was injured in Iraq as the result of an improvised explosive device.  The accident resulted in the loss of vision in his right eye. Mr. Burnett will testify he did not willfully, intentionally, or knowingly, violate any ATF rule or regulation. He simply made a mistake, an oversight. Mr. Burnett has since been reassigned to other duties.

Each of the four mistakes were clerical in nature and are fully set forth herein. Most importantly, none of the alleged violations involved transferring a firearm to a prohibited person. None of the alleged violations involved failing to conduct a required background check. None of the alleged violations involved falsifying records, such as a firearms transaction form. None of the alleged violations involved failing to respond to a trace request. None of the alleged violations involved refusing to permit ATF to conduct an inspection.   None of the alleged violations involved failing to account for a firearm. Nor did any of the alleged violations involve failure to maintain records needed for successful firearms tracing.

4

Appropriate records were maintained at all times in order to account for the acquisition and disposition of each and every firearm transferred during the entire period of the inspection. *No firearm was ever unaccounted for and not one of the alleged errors resulted in anyone being misled, or in any person receiving or possessing a firearm they were not entitled to possess under the law.*

These alleged "violations" did not result in the loss of any information necessary to trace or account for every single firearm. They were not the type of violations that pose a safety or security threat to anyone or would deny ATF critical information necessary to properly carry out its responsibilities.

Nevertheless, ATF Agent William J. Miller, rendered a decision dated March 2, 2023, finding the violations were "willful" and revoked Petitioner's Federal firearms license.

ATF's action is the direct result of the current Administration's gun control policy of targeting gun dealers. *In the past year, revocation of Federal Firearm's Licenses has increased Five hundred percent.* The initial policy announced what is in essence, a zero tolerance policy for firearms licensees who commit one of five violations: (1) transferring a firearm to a prohibited person (2) failing to run a required background check (3) falsifying records, such as a firearms transaction form (4) failing to respond to an ATF tracing request and (5) refusing to permit ATF to conduct an inspection. ATF does not allege that Petitioner violated any of these provisions.

ATF is now, as demonstrated in the instant case, seeking revocation of Federal Firearm Licenses for routine mistakes and minor paperwork errors. ATF is now taking the position that such minor paperwork errors are **willful violations,** regardless of whether they were actually committed as the result of inadvertence, accident, mistake or negligence. This position has been soundly criticized on both legal and equitable grounds. See for example, *The Federalist,* "Gun Store

Shutdowns Spike 500 Percent Under 'Zero Tolerance' For Typos" (Mark Oliva, June 3, 2022) (Ex. 3); and *Letter of United States Representative Mark. E. Green to ATF Director Steven M*. Dettelbach (October 5,2023) (Ex.4).  On June 29, 2022, twenty-five United States Representatives directed a letter to  Acting Director Gary Restaino, attached Exhibit 5, stating: *"At the aggressive direction of the Department of Justice (DOJ), the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is currently undertaking a broad and unprecedented effort to revoke Federal Firearm Licenses (FFLs) from law-abiding business owners throughout the country. In recent months, the number of FFL revocation proceedings initiated by ATF has skyrocketed and ATF has reportedly adopted an officially sanctioned practice of basing revocations on minor infractions discovered in previously closed inspections."  "The DOJ's efforts to force its administration's agenda onto ATF are particularly disturbing. Local ATF field agents have shared they feel pressured to take actions against individual businesses that they do not feel are appropriate or in the interest of public safety."  "ATF Directors of Industry Operations, who oversee revocation proceedings, are being told to press forward with this escalating quota system or face professional repercussions."  "This storm of increased regulatory enforcement is directed at the industry as a whole without regard to the personal destruction wrought upon its individual members."*

On April 18, 2023. pursuant to 18 U.S. C. § 923 (f) (3), Petitioner filed its Petition for a trial *de novo* before the United States District Court, contesting ATF's decision that Petitioner had willfully violated any provision of Chapter 44 of the United States Code.  Petitioner is prepared to vigorously defend against any allegation that Petitioner's employees willfully violated any rule or regulation and to contest fully the propriety of the revocation of their firearm's license.

Unfortunately, in the meantime, the revocation of Petitioner's firearms license is having a dramatic and devastating effect on Petitioner's nearly 30-year-old business.  Petitioner's business has

suffered an approximately 33 per-cent loss in its pawn business and a loss of the sale of approximately 200 firearms per month. All of which directly affects the sustainability of Petitioner's life-long family business. The ability to sell and transfer firearms is the heart and soul of Petitioner's business. The effect of the Government's action is far greater than the termination of a federal firearm's license, it is the effective termination of a business Petitioner has spent a lifetime building.

The law provides that Petitioner is entitled to a full and fair hearing before the United States District Court, and an independent decision by that Court, before Petitioners right to possess a federal firearms license can be revoked. The final opinion is too important to be left to an ATF employee. Likewise, the temporary revocation of the Petitioner's license, with its equally devastating effect, should not rest solely upon the decision of an ATF employee. Petitioner's license should not be revoked for any period of time until the matter has been fully and fairly litigated before the Court.

Staying the revocation until the conclusion of this litigation poses no harm to law enforcement or the public. Denying the stay, on the other hand, will create an undue hardship for Cityline, and its employees.

It is for these reasons Petitioner prays this Court enter an order staying the revocation of Petitioners Federal Firearms License until the conclusion of the proceedings herein.

## FACTS AND ARGUMENT

### Cityline is a longstanding firearms licensee that has earned a reputation for honesty, good moral character, and law abidingness.

1.  Petitioner Cityline Partnership, L.L.C. d/b/a Southside Pawn ("Cityline") is a limited liability corporation, and the holder of Federal firearms license No. 5-43-189-02-6E-11032 issued by BATF, which authorizes Cityline to engage in business as a dealer in firearms (including pawn broker), pursuant to 18 U.S.C. §44 (the "Gun Control Act").

7

2.    Cityline does business as Southside Pawn, a pawn shop located at 8101 Gravois Road, St. Louis, Missouri 63127 (the "Property").

3.    Cityline has maintained its FFL in good standing for nearly thirty (30) years. The initial license having been issued in the name of Cityline Partnership, L.L.C., and at the direction of ATF the name on the FFL license was changed to Cityline Partnership, L.L.C., d/b/a Southside Pawn.

4.    Cityline is a longstanding business, who has operated at their location for nearly thirty (30) years and has earned a reputation in the community and within local, state and federal law enforcement agencies, for honesty, good moral character, and law abidingness.

5.    Cityline, as a business entity, has always strived to follow the law and to support law enforcement in every way possible.

6.    This philosophy was instilled in them by the original founder of Cityline, Keith Brooks, who himself was a former Jennings, Missouri police officer.

7.    Mr. Brooks managed Cityline and first applied for a firearms license in 1994. Mr. Brooks continued in the business until his death in 2020.

8.    As attested by the accompanying affidavits from former St. Louis police officer Ray Absolon, (Attached Exhibit 1) and former FBI Agent Larry Burns, (Attached Exhibit 2) both employees of Cityline, there is no other pawn shop in the St. Louis area that is more well respected by law enforcement or more conscientious in the operation of their affairs, than Cityline.

9.    Cityline has continued to hold a firearms license, without suspension or revocation for nearly thirty (30) years.

10.    Cityline's current managing partner, Angela Muegge, is the daughter of Keith Brooks and began working with her father in the family business in 1998 and continues to manage the business to this date in the same tradition as her father.

8

11.     Ms. Muegge's interest in Cityline goes far beyond that of a mere business owner, Cityline is indeed part of her heritage.

**The four alleged violations are clerical in nature and were not willfully committed.**

12.     Based on a compliance inspection that occurred in June of 2022, Respondent recommended the revocation of Cityline's FFL because of four minor record keeping errors discovered during the audit of approximately 1500 firearms reports completed during the year 2021.

13.     Respondent may not revoke Petitioner's FFL unless Petitioner has **willfully** violated any provision of Chapter 44 of the United States Code, or any rule or regulation prescribed by the Attorney General under Chapter 44.

14.     On October 11, 2022, Respondent issued a "Notice to Revoke License" alleging the four record keeping errors were "willful violations" on the part of Cityline.

15.     The "violations" found against Cityline were not willful violations but were clerical in nature resulting from accident, mistake, or inadvertence.

16.     Pursuant to 18 U.S.C. §923(f)(2) and Title 27, C.F.R. §478.54, Cityline requested a hearing on said Notice of Revocation, which hearing took place on the record on January 26, 2023.

17.     On March 2, 2023, Respondent issued a Final Notice of Revocation, which included Findings of Fact and Conclusions of Law.

18.     18 U.S. C. § 923 (f) (3) provides that the aggrieved party may within sixty days after the date notice was given of the Final Notice of Revocation file a petition in the United States District Court for a de novo judicial review of such revocation.

19.     On April 18, 2023 within the time frame for appeal, Petitioner filed its Petition for *de novo* review and stay of revocation order.

9

20.     Three of the four "violations" found against Cityline, were allegedly committed by employee Brendan Burnett (Burnett).

21.     Burnett was a relatively new employee of Southside Pawn and was employed as part of Cityline's dedication to the disabled men and women of our United States Military who have sacrificed life and limb in the protection of our country.

22.     Burnett, while a member of the United States Army serving in Iraq was the victim of an enemy improvised explosive device which detonated while he was on patrol in Iraq.

23.     Burnett was a gunner on a Mine Resistant Ambush Protected Vehicle (MRAP) at the time of the explosion and suffered grievous injuries including loss of sight in his left eye.

24.     Burnett was left with a serious infection in his right eye and long-term treatment has left him with glaucoma in his right eye.

25.     Burnett was hired because of his abilities and largely because of his character.

26.     Burnett is not the kind of person who would willfully violate any law or ATF regulation or act with deliberate indifference towards them. Brendan is a man who has a character trait for honoring and respecting his country and its laws.

27.     Each firearm transaction requires an employee to complete a firearms report form known as an ATF form 4473. Approximately fifteen hundred 4473s were reviewed during the inspection. Only four (4) "violations" were listed as supporting the revocation of Cityline's firearms license.

28.     In the first of Brendan's three (3) "violations," he missed the fact that, when taking possession of a firearm on pawn from a previously known customer, Antonio Harwell, Mr. Harwell inadvertently marked the box, in question 21 (f), indicating that he had been adjudicated a mental defective or has been committed to a mental institution.

10

29.     Mr. Harwell has never been so adjudicated or committed, and this was simply an oversight error.

30.     Mr. Harwell had been in the store a couple of months earlier and filled out a form 4473 for Burnett stating he had never been so adjudicated or committed.

31.     The firearm was redeemed by Mr. Harwell.

32.     Mr. Harwell was never a prohibited person. This alleged error did not result in anyone possessing a firearm that they did not already have or possessing a firearm they were not entitled to have under the law.

33.     In the second alleged "violation" Burnett, when receiving a firearm already possessed by Sandra Martin, did not catch that Ms. Martin had not checked, one way or the other, the box corresponding to whether she had been adjudicated a mental defective or had been committed to a mental institution.

34.     The firearm was later returned to Ms. Martin.

35.     Ms. Martin was never adjudicated a mental defective or had been committed to a mental institution.

36.     Ms. Martin was never a prohibited person. This error did not result in anyone possessing a firearm that they did not already own, or that they were not entitled to have under the law.

37.     In the third alleged "violation" Burnett allegedly failed to place a mark beside the word "delayed" in question 27 c. when ATF could not give him an immediate answer to his National Instant Criminal Background Check System (NICS) inquiry.

38.     In the very next question, 27.d, Burnett appropriately marked the box confirming that "No response was provided within 3 business days", and properly transferred the firearm.

11

39.     It was apparent to anyone reading this 4473 that the requested response was delayed, because it did not arrive within 3 business days.

40.     This alleged "error" did not result in anyone being misled, or in any person receiving or possessing a firearm they were not entitled to possess under the law.

41.     The fourth "violation" is attributed to managing partner Angela Muegge.

42.     On September 1, 2021, Ms. Muegge received a firearm from Edvin Draganovic.

43.     When Ms. Muegge called in for the NICS information, none was forthcoming.

44.     Six days later Ms. Muegge still did not have a NICS report.

45.     Thinking that she had waited the appropriate 3 days, she transferred the firearm back to Mr. Draganovic.

46.     Ms. Muegge took into account the intervening weekend but mistakenly failed to take into account an intervening holiday.

47.     The three-day waiting period would not technically have been up until the next day, the 8th of September.

48.     The 8th day of September came and went without a response from NICS.

49.     Respondent alleges this transfer was one day early, and Ms. Muegge should have waited one more day for the response, a response that never came.

50.     Mr. Draganovic was not a prohibited person, and the transfer did not result in Mr. Draganovic obtaining a firearm he was not legally able to possess, Mr. Draganovic simply got his gun back one day earlier.

12

**Cityline's alleged violations did not present a danger to any individual or the public and none of the alleged errors resulted in anyone being misled, or in any person receiving or possessing a firearm they were not entitled to possess under the law.**

51.     None of the alleged violations involved transferring a firearm to a prohibited person.

52.     None of the alleged violations involved failing to conduct a required background check.

53.     None of the alleged violations involved falsifying records, such as a firearms transaction form.

54.     None of the alleged violations involved failing to respond to a trace request.

55.     None of the alleged violations involved refusing to permit ATF to conduct an inspection.

56.     None of the alleged violations involved failing to account for a firearm.

57.     None of the alleged violations involved failing to maintain records needed for successful firearms tracing.

58.     Appropriate records were maintained in order to account for the acquisition and disposition of all firearms transferred during the entire period of the inspection.

59.     No firearm was ever unaccounted for.

60.     These alleged "violations" did not result in the loss of any information necessary to trace or account for every single firearm.

61.     The alleged "violations" are not the type of violations that pose a safety or security threat to anyone, nor did they deny ATF of critical information necessary to properly carry out its responsibilities.

## Cityline has implemented new procedures to remove the possibility of human error in the future.

62.     Cityline has since implemented new procedures and policies to help ensure human errors of this nature will not occur in the future.

63.     Those procedures and policies include: the implementation of overlay templates; re-assigning Mr. Burnett; instituting a two-person paper copy check procedure; and developing and committing to a new software program especially adapted for pawn shops to eliminate human error.

### Conclusion

64.     The Findings of Fact and Conclusions of Law contained within the Final Notice of Revocation were not supported by the evidence presented and are contrary to the law regarding what constitutes "willful violations", which finding is necessary to support the revocation of Petitioner's FFL.

65.     Because the alleged violations on the part of Petitioner as alleged by Respondent were not "willful" in nature, Respondent's decision to revoke Petitioner's FFL was arbitrary, capricious, contrary to law, an abuse of discretion, and/or unsupported by substantial evidence.

66.     Under the foregoing circumstances, staying the revocation until the United States District Court can take up and consider the equities in staying the revocation until conclusion of the ensuing litigation, poses no harm to law enforcement or the public.

67.     Denying the stay will create an undue hardship on Cityline, and its employees as they seek to transfer firearms presently held. The pawning of firearms is a major part of Citylines' business and the inability to deal in firearms is seriously jeopardizing Citylines' ability to operate, is resulting in loss of substantial income, and may result in a reduction in workforce and the loss of valuable jobs.

14

68.     Based on the foregoing, and the irreparable damage as described herein that will occur to Petitioner if the revocation is not stayed, Petitioner is entitled to a stay order issued by this Court enjoining the revocation of Petitioner's FFL until a full *de novo* hearing is conducted, and upon said hearing, to a reversal of the decision of to revoke Petitioner's federal firearms license.

WHEREFORE Petitioner Cityline Partnership, L.L.C., d/b/a Southside Pawn prays this Court to issue an Order staying the revocation of Petitioner's FFL pending adjudication of the Petition for Review.

JOHNSON, SCHNEIDER & FERRELL, L.L.C.

_/s/ Larry H. Ferrell_____
LARRY H. FERRELL #28874

LARRY H FERRELL
JOHNSON, SCHNEIDER & FERRELL, L.L.C.
212 North Main Street
Cape Girardeau, MO 63701
Telephone: (573)335-3300
Facsimile: (573)335-1978
Email: LarryF@Johnsonschneider.com

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT
STATE OF MISSOURI

CITYLINE PARTNERSHIP, L.L.C.,          )
d/b/a SOUTHSIDE PAWN,                   )
                                       )
          Petitioner,                  )
                                       )
v.                                     )          Case No.:
                                       )
UNITED DEPARTMENT OF JUSTICE,          )
BUREAU OF ALCOHOL, TOBACCO,            )
FIREARMS AND EXPLOSIVES,               )
                                       )
          Respondent.                  )
                                       )
                                       )

## AFFIDAVIT OF RAYMOND W. ABSOLON, JR.

The undersigned, Raymond W. Absolon, Jr., after having been first duly sworn upon his

oath, deposes and states that he is over the age of eighteen (18) and has personal knowledge of

the facts set forth below and can competently testify to the following facts:

1.      I have been an employee of Cityline Partnership, L.L.C. for 14 years and serve as

its firearms instructor.

2.      I previously served as a law enforcement officer for ten (10) years with the St.

Louis Metropolitan Police Department, and thirty (30) years with the St. Louis County Police

Department.

3.      Of my forty years in law enforcement, I spent twenty-six of those years in

investigations, twelve of which were in the robbery-homicide division with the Saint Louis

County Police Department.

4.      I have known Keith Brooks, who founded Cityline Partnership, L.L.C., since it

opened in 1994.

EXHIBIT

1

5.    I have known Keith's daughter Angela Muegee for well over thirty years.

6.    I have watched the business expand over the years form the original Southside Pawn shop to include the addition of firearms sales and a state-of-the-art indoor shooting range.

7.    The Brooks family has always fostered an attitude of respect and appreciation for the law and law enforcement.

8.    Cityline is well known within the law enforcement community as an honest and ethical business.

9.    Cityline and its employees have always provided the utmost respect, courtesy, cooperation and support for law enforcement.

10.    Cityline has been conscientious in imparting to its employees a faithful adherence to the law and for following legal standards.

11.    Cityline has earned and maintained a reputation within the law enforcement community for honesty, law abidingness and integrity.

Further Affiant sayeth not.

Raymond W. Absolon, Jr.

Subscribed and Sworn before me this 18 day of April, 2023.

ELVANA MICI
Notary Public - Notary Seal
St Louis County - State of Missouri
Commission Number 22540301
My Commission Expires Jul 10, 2026

Notary Public

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT
STATE OF MISSOURI

CITYLINE PARTNERSHIP, L.L.C.,    )
d/b/a SOUTHSIDE PAWN,            )
                                )
        Petitioner,             )
                                )
v.                              )        Case No.:
                                )
UNITED DEPARTMENT OF JUSTICE,   )
BUREAU OF ALCOHOL, TOBACCO,     )
FIREARMS AND EXPLOSIVES,        )
                                )
        Respondent.             )
                                )
                                )

## AFFIDAVIT OF LARRY BRUNS

The undersigned, Larry Bruns, after having been first duly sworn upon his oath, deposes and states that he is over the age of eighteen (18) and has personal knowledge of the facts set forth below and can competently testify to the following facts:

1.    The affiant is an employee of Cityline Partnership, L.L.C. serving as their firearms Training Director where I was responsible for, among other duties, developing training programs to qualify private security officers for licensing by the St. Louis City and County Police Departments. I currently serve as the Training Advisor.

2.    I retired in December 2012 after a nearly twenty-five (25) year career as a Special Agent for the Federal Bureau of Investigation.

3.    During my employment with Cityline I have had the opportunity to work closely with other employees and the managing partner, Angela Muegge.

**EXHIBIT**

2

4.      At all times I have found Cityline to be a highly responsible and dedicated organization that promotes honesty and integrity in all that they do.

5.      Cityline is conscientious in its mission to see that prohibited individuals are denied access to firearms on their premises and requires all participants on the range to complete a series of question verifying they are not disqualified in any manner from possessing a firearm.

6.      Cityline has an excellent reputation within the law enforcement community and is known for conducting its business in an honest and law-abiding manner.

Further Affiant sayeth not.

Larry Bruns

Subscribed and Sworn before me this _18th_ day of _April_____ , 2023.

Notary Public

LARRY H. FERRELL
JOHNSON, SCHNEIDER & FERRELL, L.L.C.
212 North Main Street
Cape Girardeau, MO 63701
Telephone: 573-335-3300
Facsimile: 573-335-1978
Email: LarryF@Johnsonschneider.com



Case: 4:23-cv-00493-SEP   Doc. #: 8   Filed: 05/19/23   Page: 18 of 31 PageID #: 40

BE LOVERS OF FREEDOM AND ANXIOUS FOR THE FRAY

★★★

A DIVISION OF FDRLST MEDIA

| 1 | *TRENDING:* The Explosive Durham Report Proves Republicans Can't Afford T... | 2 | *TRENDING:* Tuberville Is Right To Hold The Line Against The Pentagon's... | 3 | *TRENDING:* Daniel Penny Deserves A Medal, Not Jail Time |

★★★   BREAKING   ★★★

**North Carolina Lawmakers Pass 12-Week Abortion Ban, $160 Million In Funding For Women And Children**

GUNS

# 500 Percent Spike In Biden Administration Shutting Down Gun Retailers Over Typos

BY: MARK OLIVA

JUNE 03, 2022

🕓 5 MIN READ



📷 STEVE BAKER/FLICKR

**Firearm license revocations for retailers have increased greatly, and overzealous inspectors risk retailers' cooperation with law enforcement.**

---



MARK OLIVA

MORE ARTICLES

SHARE

President Joe Biden is overzealously targeting firearm retailers to drive them out of business. Federal firearm license revocations for retailers have increased 500 from previous years. That's got gun control groups excited, but it is casting a pall over the cooperative relationship firearm retailers maintain with law enforcement.

President Biden never hid the fact that he intended to use the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to drive his gun control agenda. He campaigned on a platform of targeting the firearm industry instead of focusing on criminals.

5/17/23, 4:22 PM

"Our enemy is the gun manufacturers, not the NRA, the gun manufacturers,"
President Biden said from the presidential campaign debate stage.

That hostility produced a platform that turned the ATF from the bureau that
regulates the firearm industry and enforces federal gun laws into the hammer
and anvil by which the Biden administration is pummeling flat firearm retailers.
Instead of compliance inspections by ATF Industry Operations Investigators to
work to ensure firearm retailers remain within federal firearm regulations,
those inspections are now driving firearm retailers out of business.

# Revocations

Lee Williams, an independent investigative reporter specializing in covering
firearms, revealed that ATF once revoked the licenses of federal firearms
licensees (FFLs) at a rate of about 40 each year. "But, in the 11 months since Joe
Biden declared war on 'rogue gun dealers,' the ATF has revoked 273 FFLs — an
increase of more than 500%," Williams reported. "However, rather than
targeting the true rogues, Biden's ATF is revoking FFLs for the most minor of
paperwork errors, which were never a concern for the ATF until Biden
weaponized the agency."

Case: 4:23-cv-00493-SEP    Doc. #: 8    Filed: 05/19/23    Page: 21 of 31    PageID #: 43

That's due to the Biden administration's "zero tolerance" <u>inspection policy</u>. That means inspectors are revoking federal firearms licenses for even minor clerical errors that previously would warrant a warning letter.

ATF has the authority to revoke licenses for even these minor clerical errors but used to be more interested in compliance. That changed under the Biden administration and the Department of Justice (DOJ) led by Attorney General Merrick Garland. National Shooting Sports Foundation (NSSF) is providing retailers with <u>guidance</u> to be prepared for these inspections.

## Misplaced Priorities

The White House budget request clearly identified that driving gun stores out of business was a higher priority than pursuing criminals. President Biden <u>proposed</u> earlier this year to spend $20.6 billion on the Justice Department for federal law enforcement, crime prevention, and intervention.

Tucked into that spending proposal were plans for the ATF to hire 140 special agents and another 160 Industry Operations Investigators. That's more inspectors to revoke licenses than special agents to actually lock up criminals.

The Biden administration refuses to get tough on crime but is zealous in targeting the firearm industry.

Thomas Brandon, former ATF acting director, told USA Today that the goal of inspections is to get dealers compliant, not to penalize them. "The high majority of FFLs are good hardworking people running businesses, and they're our front-line of defense for intelligence for diversion of firearms with straw purchases," Brandon said, referring to when someone attempts to purchase a firearm for someone else who can't.

The firearm industry absolutely wants firearm retailers that flout the law to be held accountable, but addressing the rare instances of criminal activity at the gun counter neglects the larger problem of criminal misuse of firearms. Indeed, that policy of targeting "rogue gun dealers" could have unintended consequences.

# Unintended Consequences

Firearm retailers willingly cooperate with ATF special agents on suspect attempts to purchase firearms. They are often the ones providing tips to special agents on suspected straw purchases. Now, those same retailers are forced to

consider the consequences of inviting ATF into their retail locations. When a potential tip to criminal activity by a random person wandering into their store could result in a business owner losing a license and income, that threatens the ability of the ATF to enforce the law.

That's got special agents in the field concerned. Agents in ATF field offices who chose to remain anonymous have told NSSF the "zero tolerance" policy will do more harm than good. It will dry up their most valuable source of intelligence on criminal activity — the local gun store owner who wants criminals to be locked up.

Now, owners are forced to consider the unintended consequences of trying to do the right thing. Tips of suspect activity could lead to an inspection and a misplaced entry in a record book could put that gun store owner out of business.

There's little reason to believe the policies will be reversed. The U.S. Senate Judiciary Committee questioned President Biden's nominee to become ATF director, Steve Dettelbach, in a confirmation hearing last week. Sen. Chuck Grassley (R-Iowa) confronted Dettelbach about the "zero tolerance" policy and the Biden administration's policy of rooting out "rogue dealers." Dettelbach demurred on defining a "rogue dealer," adding only that federal firearm license revocations should be reserved for "willful violations" and not "inadvertent errors."

"The key to enforcement programs, it has to be fair, it has to be consistent, and it has to be effective," Dettelbach told Sen. Grassley. The Biden administration's "zero tolerance" policy to decimate firearm retailers is proving to be counterproductive.

Case: 4:23-cv-00493-SEP     Doc. #: 8     Filed: 05/30/23     Page: 24 of 31     PageID #: 46

*Mark Oliva is managing director of public affairs for the National Shooting Sports Foundation, the trade association for the firearms and ammunition industries.*

---

ATF          ATF DIRECTOR          CHUCK GRASSLEY          DEPARTMENT OF JUSTICE          FIREARMS

FIREARMS INDUSTRY          GUN CONTROL          GUN INDUSTRY          GUNS

MARK E. GREEN, M.D.
7TH DISTRICT, TENNESSEE

2446 RAYBURN BUILDING
WASHINGTON, D.C. 20515
(202) 225-2811

305 PUBLIC SQUARE
SUITE 212
FRANKLIN, TN 37064
(629) 223-6050

128 N. SECOND STREET
SUITE 104
CLARKSVILLE, TN 37040
(931) 266-4483



**Congress of the United States**
**House of Representatives**
**Washington, D.C. 20515**

COMMITTEE ON FOREIGN AFFAIRS
RANKING MEMBER OF THE SUBCOMMITTEE ON
THE WESTERN HEMISPHERE, CIVILIAN SECURITY,
MIGRATION AND INTERNATIONAL ECONOMIC POLICY

SUBCOMMITTEE ON ASIA, THE PACIFIC,
CENTRAL ASIA AND NONPROLIFERATION

COMMITTEE ON ARMED SERVICES
SUBCOMMITTEE ON TACTICAL AIR AND
LAND FORCES

SUBCOMMITTEE ON READINESS

SELECT SUBCOMMITTEE ON
THE CORONAVIRUS CRISIS

October 5, 2022

Steven M. Dettelbach
Director
Bureau of Alcohol, Tobacco, Firearms, and Explosives
99 New York Avenue NE
Washington, DC 20226

Director Dettelbach:

In June 2021, President Biden announced that his administration would begin implementing a "zero tolerance" policy for federal firearms dealers who willfully violate the law. The ATF, per his announcement, would seek to revoke licenses of dealers in the first instance of a willful violation of law and, in some reported instances, for a violation of the law even if there is no clear basis to establish that the violation was willful. Many Federal Firearms Licensees report that over the course of the past year, revocation proceedings have been initiated at a rapid pace for minor infractions that were unintentional and generally involved technical or clerical mistakes. There are also reports that revocation proceedings have been later initiated even after a warning letter or warning conference concluded the matter.

In essence, it now appears that the Congressional requirement of a "willful violation" has been twisted into "negligence" or even mere human errors – a major distinction that ignores the plain language and intent of the law that Congress has enacted and that the ATF is bound to follow. Congress had no intent to authorize the ATF to strangle the chain of distribution through which citizens are generally expected to purchase firearms.

The Firearms Owners' Protection Act requires the Attorney General to approve any application for a Federal Firearms License that meets the relevant criteria. Under 18 U.S.C. 923, a Federal Firearms License applicant must not have "willfully violated" the law or willfully failed to disclose required material information, among other requirements. The Attorney General then has a 60-day period in which to approve or deny such an application.

18 U.S.C. 923(e) provides that the Attorney General may revoke a license if the license holder has willfully violated any provision of Chapter 44. Revocations may be granted only for willful violations, not unintentional errors or technical mistakes. Additionally, the revocation process requires notice and opportunity for hearing, and judicial review of such denials or revocations is required to be *de novo*.

In the recent landmark decision of *West Virginia vs. EPA*, the Supreme Court rebuked an administrative agency that sought to exercise power on major policy beyond what Congress had enacted in the statute. The ATF's power to revoke licenses from gun dealers is an authority with a significant bearing on the ability of citizens to acquire firearms as they seek to exercise their constitutional right to keep and bear arms. It is no trivial or technical matter left to agency discretion – it has significant



EXHIBIT
4

consequences. As such, when Congress passed laws on this matter, it meant precisely what it said. ATF should apply the laws to seek and encourage the education and compliance of licensees under its supervision, not with an agenda to seek to terminate licensees who have a minor quantity of violations and are able to demonstrate a willingness and desire to improve.

In fact, the term "willfully" in the Firearms Owners' Protection Act clearly refers to acts done with intent. In its most obvious and straightforward usage, it distinguishes between deliberate acts and unwitting accidental conduct. As a general matter, establishing a willful violation of federal statute requires that "the Government must prove that the defendant acted with knowledge that his conduct was unlawful."[1] In the case of *Bryan v. United States* (1998), the Court spoke to the clear underlying aim of FOPA in the course of upholding the conviction of an unlicensed dealer, stating that "**FOPA was enacted to protect law-abiding citizens who might inadvertently violate the law.**"[2] Additionally, it must be noted that the law specifically added the "willfully violated" term into the statute as it sought to clarify the application of ATF's enforcement power with respect to licensees.

In light of the clear purpose and meaning of the law, the ATF must respect the limitations that Congress has imposed on this process. The ATF needs to work with licensees to improve compliance practices instead of weaponizing the revocation authority. The laws are intended to ensure that the government can prosecute unscrupulous gun dealers who intentionally and willfully sell firearms to those who are not allowed to have them and refuse to cooperate with investigations of crimes, while protecting those FFLs who may inadvertently make minor paperwork errors but are fairly seeking to comply with federal firearm laws as enacted by Congress. It is not a matter left to the discretion of administrators or even the President – it is the clear statutory prescription of Congress.

I look forward to hearing how your agency plans to ensure that its enforcement power remains targeted on those who are engaged in willful noncompliance with the law and otherwise works in cooperation with FFLs who may inadvertently commit minor infractions. To start that process, I am requesting that you provide me with a report of all the federal firearms dealers who have had compliance inspections since January 1, 2018, in Tennessee, which report should detail the violations which were identified by ATF, the circumstances identified by ATF on the issue of whether the violations were willful, whether ATF undertook any adverse action against those licensees, and whether any of those licensees surrendered their licenses or had their licenses suspended or revoked. I am requesting this report by December 1, 2022.

Sincerely,

Mark E. Green, M.D.
Member of Congress

---

[1] Ratzlaf v. United States, 510 U.S. 135, 137 (1994)
[2] *Bryan v. United States,* 524 U.S. 184, 11 n. 23 (emphasis added)

# Congress of the United States
## Washington, DC 20515

June 29, 2022

Gary Restaino
Acting Director
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, NE
Washington, D.C. 20226

Dear Acting Director Restaino:

At the aggressive direction of the Department of Justice (DOJ), the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is currently undertaking a broad and unprecedented effort to revoke Federal Firearm Licenses (FFLs) from law-abiding business owners throughout the country.  In recent months, the number of FFL revocation proceedings initiated by ATF has skyrocketed[1] and ATF has reportedly adopted an officially sanctioned practice of basing revocations on minor infractions discovered in previously-closed inspections.[2]  According to business owners, these inspections, occurring six to eighteen months prior, often involved clerical errors that were fully resolved and addressed by the businesses with no subsequent infractions.

The DOJ's efforts to force its administration's agenda onto ATF are particularly disturbing.[3]  Local ATF field agents have shared they feel pressured to take actions against individual businesses that they do not feel are appropriate or in the interest of public safety.[4]  Some have even reported that ATF field divisions are being pitted against each other and being forced to compete on the number of licenses revoked.[5]  ATF Directors of Industry Operations, who oversee revocation proceedings, are being told to press forward with this escalating quota system

---

[1] Mark Oliva, *500 Percent Spike In Biden Administration Shutting Down Gun Retailers Over Typos*, THE FEDERALIST (June 3, 2022), https://thefederalist.com/2022/06/03/500-percent-spike-in-biden-administration-shutting-down-gun-retailers-over-typos/.

[2] 2022 Firearms Industry Conference, Apr. 26-27, 2022 (ATF shared at the conference that it was in the process of initiating 273 revocation proceedings based on cases that had been closed since as early as July 1, 2021).

[3] The White House, Fact Sheet: Biden-Harris Administration Announces Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety (June 23, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/06/23/fact-sheet-biden-harris-administration-announces-comprehensive-strategy-to-prevent-and-respond-to-gun-crime-and-ensure-public-safety/ (The Justice Department announced a new policy that would cause federal firearm licensees to have their licenses revoked upon their first infraction, "absent extraordinary circumstances that would need to be justified to the Director, ATF").

[4] Two sources close to ATF have stated that field agents are being pressured by the Department of Justice to increase revocations and are being compared to other field divisions within ATF.

[5] *Id.*



EXHIBIT
5

or face professional repercussions.[6]  This commandeering of agency discretion to support the administration's agenda undermines ATF's ability to function as a specialized agency and is rapidly destroying the trust and confidence ATF has worked hard to establish with the firearms industry over many decades.  This is the same trust and confidence that has historically fostered open communications between ATF and members of the industry, resulting in voluntary reporting of criminal or suspicious activity and frank discussions to help improve compliance.

This storm of increased regulatory enforcement is directed at the industry as a whole without regard to the personal destruction wrought upon its individual members.  In addition to the scores of innocent businesses at threat of being destroyed, we have heard that one licensee died of an anxiety attack within days of receiving his final notice of revocation and another licensee committed suicide during the revocation process.

One business currently caught up in this regulatory whirlwind is Mr. Silencer, founded by Bruce Stevens and his wife in 2010.  Though beginning as a small startup, it has grown into one of the largest firearms dealers in the state of Arizona.  The Stevenses take regulatory compliance seriously and, as their business has grown, they have implemented policies to ensure their employees are well-trained and follow the law.

According to the Stevenses, in June of 2021, ATF conducted a routine compliance inspection of Mr. Silencer and, as in virtually any inspection of a large dealership, discovered certain technical or paperwork infractions that were within the expected scope for a dealership of that size.  Notably, per the Stevenses, all firearms were accounted for, there were no allegations of straw purchases, and none of the customers purchasing firearms were prohibited persons.  ATF closed its inspection with a warning and took no further action against Mr. Silencer.

Nearly six months later, however, ATF changed tack and issued a Notice of Revocation, effectively stating it was shutting down Mr. Silencer.  Bruce Stevens requested a hearing and provided testimony regarding the specific instances identified by ATF as supporting the revocation.  The strongest claims against Mr. Silencer related to two instances out of thousands of annual transactions, for which the company had failed to conduct a NICs background check prior to delivering a firearm to a customer.  Bruce Stevens testified at an ATF hearing that both instances resulted entirely from a glitch with his order management software and involved

---

[6] Memorandum from Acting Assistant Director (Field Operations) to All Special Agents in Charge, All Directors, Industry Operations, Bureau of Alcohol, Tobacco, Firearms and Explosives (July 14, 2021), https://www.ammoland.com/wp-content/uploads/2021/07/USDOJ-Memorandum-on-ATF-O-5370-Federal-Firearms-Administrative-Action-Policy-and-Procedures.pdf (explaining that when a Director, Industry Operations determines that recommending an alternative to revocation is appropriate, he or she must route that recommendation to his or her superior, the Deputy Assistant Director, Industry Operations, Office of Field Operations who will then approve or deny such recommendation).

situations in which the customer had actually undergone a recent NICs background check but not for the particular firearm at issue.

Bruce Stevens shared that none of the infractions identified by ATF were intentional, and, according to him, the ATF hearing officer did not think they were. Rather, the hearing officer simply stated that Mr. Silencer knew the law yet committed the infractions, and therefore must have acted with "plain indifference." This determination conflicts with ATF's own findings in its audit as shared with Mr. Silencer and the plain language of the Gun Control Act which requires **willful noncompliance** before a license can be revoked.[7]

Mr. Silencer's case is not alone. ATF publicly announced at the April 2022 Firearms Industry Conference that they were in the process of initiating 273 revocation proceedings based on cases that had been closed since as early as July 1, 2021, even when the FFL has had zero compliance infractions since their case was closed.[8] This pattern, along with the claim that ATF field divisions are competing to revoke licenses, indicates a troubling trend of ATF attacking businesses to advance an anti-gun agenda.

Please answer the following questions and provide the requested information no later than July 15, 2022.

1. Is there an official or unofficial competition among ATF field divisions related to FFL revocations?
2. Has the DOJ or ATF established quotas related to FFL revocations or any other metric related to FFL revocations?
3. How many FFLs were revoked by ATF from 2009-2016?
4. How many FFLs were revoked by ATF from 2017-2020?
5. How many FFLs were revoked by ATF from 2021-present?
6. How many FFLs is ATF in the process of revoking?
7. Please provide all email communications from DOJ or ATF leadership to field division leadership regarding the revocation of FFLs.
8. Please provide all email communications from ATF field division leadership to field agents regarding the revocation of FFLs.

---

[7] 18 U.S.C. § 923.
[8] *See supra* note 3.

We look forward to receiving the requested information.

Sincerely,

Andy Biggs
Member of Congress

Jim Jordan
Ranking Member
House Committee on the Judiciary

Steve Chabot
Member of Congress

Louie Gohmert
Member of Congress

Darrell Issa
Member of Congress

Ken Buck
Member of Congress

Matt Gaetz
Member of Congress

Mike Johnson
Member of Congress

Tom McClintock
Member of Congress

W. Gregory Steube
Member of Congress

Tom Tiffany
Member of Congress

Thomas Massie
Member of Congress

Chip Roy
Member of Congress

Dan Bishop
Member of Congress

Michelle Fischbach
Member of Congress

Victoria Spartz
Member of Congress

Scott Fitzgerald
Member of Congress

Cliff Bentz
Member of Congress

Burgess Owens
Member of Congress

Jody Hice
Member of Congress

Michael Cloud
Member of Congress

Fred Keller
Member of Congress

Byron Donalds
Member of Congress

Andrew S. Clyde
Member of Congress

Ted Budd
Member of Congress